UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY STEVENS,

               Plaintiff,                     Case No. 19-11530

v.                                      Hon. Gershwin A. Drain

CONCENTRIX CORPORATION,

               Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL CONSTRUED AS A MOTION FOR PARTIAL SUMMARY JUDGMENT [#4]

### I.    INTRODUCTION

Presently before the Court is Defendant Concentrix Corporation's Motion for Partial Summary Judgment, filed on June 26, 2019. Defendant's filing was originally brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In Defendant's Motion for Partial Dismissal, Defendant argued that Plaintiff's Title VII and ADA claims are barred because Plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

In response to Defendant's Motion for Partial Dismissal, Plaintiff submitted an affidavit along with argument asserting that she began the process for filing a charge within 300 days of her termination, continued to participate in the EEOC process and then executed a charge. As such, Plaintiff maintained that she had exhausted her administrative remedies contrary to Defendant's argument. Because Plaintiff's affidavit was a matter outside of the pleadings but had direct bearing on the exhaustion of administrative remedies issue, the Court determined that it was appropriate to convert Defendant's Motion for Partial Dismissal into a Motion for Summary Judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. ECF No. 8, PageID.122. The Court also provided the parties with an opportunity to engage in discovery related to the exhaustion of administrative remedies issue. *Id.*

The parties have submitted supplemental briefing (ECF Nos. 10-11, 13). A hearing on this matter was held on December 10, 2019. For the reasons that follow, the Court will deny Defendant's Motion for Partial Summary Judgment.

## II.    FACTUAL BACKGROUND

Plaintiff began working for Defendant as a customer service representative in August of 2016. In early 2016, Plaintiff became pregnant. Plaintiff gave birth to a son in October of 2016. After the birth of her son, Plaintiff developed post-partum depression. Plaintiff returned to work in February of 2017.

By June of 2017, Plaintiff's post-partum depression had escalated to the point where she had thoughts of harming herself. Plaintiff sent an email to her supervisor, Dan Keehlisen, and a human resources representative, Lynn Dolson, describing her post-partum depression, including her suicidal thoughts. Plaintiff advised Keehlisen and Dolson that her post-partum depression made her subject to tardiness. Keehlisen and Dolson urged Plaintiff to get help, and to apply for intermittent leave under the FMLA to cover instances of tardiness, as well as therapy appointments. Plaintiff applied and was approved for intermittent FMLA leave.

During the time that Plaintiff was approved for intermittent FMLA leave, she applied for a promotion. Plaintiff's promotion was denied by her supervisor, Christina Tipton, who told her that "when you start to feel better and back to your old self we can look into promoting you."

On October 20, 2017, Defendant terminated Plaintiff. Keehlisen advised Plaintiff that the termination was due to her tardiness and that it did not matter that she was taking intermittent FMLA leave.

Plaintiff went to the EEOC to file a charge of discrimination against Defendant on July 26, 2018. ECF No. 11-4, PageID.211. An EEOC agent advised Plaintiff that the procedure to initiate a charge was to submit an EEOC Inquiry Questionnaire. *Id*. Plaintiff filled out the form indicating that:

I was fired from my job due to factors stemming from post-partum depression. My FMLA was approved due to my post-partum depression and the employer failed to accommodate my disability.

*   *   *

I was told that my attendance was the reason that I was being terminated.

ECF No. 10-2, PageID.154. She also indicated on the form that she was represented by counsel. *Id*. at PageID.155. The EEOC Inquiry Questionnaire form states on each page in capital letters: THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION. *Id.* at PageID.152.

On August 2, 2018, EEOC investigator Anthony Warren sent Plaintiff an email confirming receipt of the Inquiry Questionnaire. ECF No. 10-3, PageID.159. In his email, Warren indicated that he would like to discuss the matter with her. *Id*. He warned her that she should contact him "as soon as possible" because the "EEOC has a statute of limitations of 300 days (10 months) from the last date of harm for filing." *Id.* His email noted that a charge number had been assigned to her case: 471-2018-04228. *Id*.

Also, on August 2, 2018, Plaintiff responded to Warren's email advising that she was represented by counsel who would be filing a notice of appearance shortly. *Id.* She inquired whether Warren would prefer to speak with her subsequent to her attorney filing the notice of appearance. *Id*. Warren responded that he could not

provide advice as to what she should do but warned that she was at her 286th day from the date of her termination. *Id.*

On August 6, 2018, Plaintiff's attorney filed a Notice of Appearance at the EEOC. On that same date, Warren entered notes into the Case Log indicating that he had conducted an interview with Plaintiff on that date. ECF No. 11-9, PageID.226. He further noted that she had provided enough information to further investigate her allegation of discrimination and that she "elected to file a charge." *Id.*

On August 7, 2018, the District Director at the EEOC sent Defendant a Notice of Charge of Discrimination indicating that Plaintiff had filed a charge of discrimination against the Defendant under the ADA. ECF No. 11-10, PageID.229. Also, on August 7, 2018, Warren entered in the Case Log notes that he had mailed Plaintiff the charge for her signature. ECF No. 11-9, PageID.226. However, Plaintiff did not receive this paperwork because Warren had "put the wrong name on the envelope[,]" and on August 30, 2018, the mail was returned to the EEOC as undeliverable. ECF No. 11-11, PageID.231; ECF No. 11-12, PageID 233. Throughout this time, Plaintiff continued to communicate with the investigator about her case.

For instance, on August 15, 2018, she sent an email to Warren adding more details with respect to her case. ECF No. 11-13, PageID.236. Specifically,

Plaintiff indicated that she became pregnant in January of 2015 and that her employer placed her on early maternity leave because of the perception that her pregnancy was complicating her work. ECF 10-3, PageID.158. This shortened her paid time off. *Id.* She additionally explained that after she gave birth to her son, she began to suffer from post-partum depression. *Id.* She began having thoughts of harming herself and sought intermittent FMLA leave in order to seek mental health treatment. *Id.* She further noted that she had been denied a promotion due to her post-partum depression and that a supervisor told her that "when you start to feel better and back to your old self, we can look into promoting you." *Id.* She also advised that she was terminated even though she was "actively under FMLA" and that her supervisor told her it did not matter that she had been granted FMLA leave. *Id.*

When Warren sent a response email indicating he would add this information to her file, Plaintiff followed up and asked what the next step was in the process. *Id.* at 235. On August 17, 2018, Plaintiff sent another email to Warren asking if he required further information. *Id.* Even though he had not received Plaintiff's executed charge, Warren responded that "[t]here is nothing due from you at this time. As a reminder a full investigation could take anywhere from 6 month [sic] to 2 year, it could be shorter or longer." *Id.*

On August 27, 2018, Plaintiff's counsel contacted Warren and advised that her client had yet to receive the charge for Plaintiff to execute. ECF No. 11-14, PageID.240. Warren attempted to email the charge on that date, but he incorrectly transposed the email address and re-sent it on August 30, 2018. *Id.*

When Plaintiff's counsel received the charge, she forwarded it to Plaintiff for review. ECF No. 11-4, PageID.211. Upon review, Plaintiff determined that she wanted to make changes and Warren advised her to make changes by writing them on the form. *Id.* Plaintiff executed the charge on September 26, 2018. *Id.* The EEOC issued her a right-to-sue letter on February 26, 2019.

## III.    LAW & ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th

Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff's claims under Title VII and the ADA (Counts II, III and VI) are time barred and must be dismissed because Plaintiff failed to exhaust her administrative remedies.  Specifically, Defendant asserts that Plaintiff was required to file her charge on or before August 22, 2018 because she was terminated on October 26, 2017.  However, she did not file her charge until 334 days had passed, or on September 26, 2018.

Under Title VII, a claim for discrimination can proceed in federal district court only after administrative remedies are exhausted.  42 U.S.C. § 2000e-5(e); *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003).  "It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue." *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006). The EEOC charge "shall be in writing under oath or affirmation and shall contain such

information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co*., 643 F.3d 502, 508 (6th Cir. 2011).

An employee seeking to bring a claim under the ADA must also first exhaust administrative remedies. *Jones v. Natural Essentials, Inc*., 740 F. App'x 489, 492 (6th Cir. 2018). Analogous to Title VII, to properly exhaust administrative remedies under the ADA, a plaintiff must file a charge of discrimination within 300 days of the alleged discrimination. 42 U.S.C. § 12117 and *Sherman v. Optical Imaging Systems, Inc*. 843 F. Supp. 1168, 1180-81 (E.D. Mich. 1994).

In Michigan, claimants have 300 days to file a charge with the EEOC. Here, Plaintiff was terminated on October 26, 2017, thus she had to file her charge on or before August 22, 2018. Defendant maintains that Plaintiff did not file her charge until September 26, 2018, thus her Title VII and ADA claims are barred.

Plaintiff argues that her Inquiry Questionnaire form, coupled with her continued participation in the investigative process and subsequent verified charge, constitute a validly executed charge for purposes of exhausting her administrative remedies. Plaintiff relies on *Williams v. CSX Transp. Co*., 643 F.3d 502 (6th Cir. 2011) in support of her argument. In *Williams*, the Sixth Circuit considered

whether the plaintiff's filing of a "Charge Information Form" was a "charge" for purposes of exhaustion of administrative remedies. *Id.* at 507-10. The *Williams* court held that in order to satisfy the "charge" requirement, the filing must (1) be verified or submitted under oath or penalty of perjury, (2) contain information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of and (3) must comply with *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), which requires that an 'objective observer' . . . believe that the filing 'taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes[.]'" *Id.* at 509 (quoting *Holowecki*, 552 U.S. at 398).

Plaintiff argues that the September 26, 2018 executed charge amended her July 26, 2018 Inquiry Questionnaire's technical defect of not having been verified. Plaintiff's Inquiry Questionnaire identified her employer and described that she had been fired from her job due to factors stemming from her post-partem depression. ECF No. 10-2, PageID.154. As to whether an objective observer would believe that Plaintiff's Inquiry Questionnaire was a request for the EEOC to activate its machinery and remedial processes, there were numerous actions taken consistent with activating the EEOC's machinery. For instance, Warren assigned a charge number upon receipt of her form. ECF No. 10-3, PageID.159. On August 6, 2018, Warren entered notes in the Case Log indicating that he had interviewed

Plaintiff, she had provided sufficient information to further investigate her allegation of discrimination and that she "elected to file a charge." ECF No. 11-9, PageID.226. Moreover, the very next day, the EEOC sent Defendant a Notice of Charge of Discrimination against the Defendant under the ADA. ECF 11-10, PageID.229. On that same day, Warren sent Plaintiff a charge for her to sign. ECF No. 11-9, PageID.226. Additionally, on August 17, 2018, upon receipt of Plaintiff's email asking if there was anything else she needed to do, Warren responded that "[t]here is nothing due from you at this time[,]" even though he had yet to receive her executed charge.

In *Dimas v. Mich. Dept. of Civil Rights*, No. 4:02-CV-178, 2004 U.S. Dist. LEXIS 4834 (W.D. Mich. Mar. 19, 2004), the court held that the plaintiff's timely Inquiry Questionnaire, coupled with the agency's actions during the administrative process and the plaintiff's execution of a formal charge, albeit untimely, were factual circumstances allowing for the Inquiry Questionnaire to serve as a charge. *Id*. at *16. The *Dimas* court first acknowledged that the intake form contained all of the requisite information needed to be set forth in a charge. *Id*. Additionally, the agency had undertaken acts to activate its machinery by assigning a case number based on Dimas's questionnaire, sent documentation to the employer prior to the formal charge and the EEOC indicated in a letter to Dimas that a charge had been filed. *Id*. Lastly, the plaintiff had cured the technical defect by executing a

charge even though this occurred more than 300 days from the date the plaintiff had been denied a promotion. *Id.*

Defendant counters that unlike the plaintiffs in *Williams* and *Dimas*, Plaintiff cannot rely on her unverified Inquiry Questionnaire to serve as a charge of discrimination because her form boldly states at the bottom of each page that "THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION." ECF No. 10-2. Defendant also asserts that *Williams* and *Dimas* are distinguishable because Plaintiff was put on notice by Warren that there was a fast approaching 300-day deadline for submission of her verified charge and Plaintiff was represented by counsel. However, nothing in *Williams* or *Dimas* suggests that the plaintiffs maintained they were unaware of the 300-day deadline for filing an EEOC charge. Moreover, Defendant offers no authority for its position that because Plaintiff had counsel and notice of the 300-day deadline, she is precluded from curing the technical defect of failing to execute the charge.

A review of the *Williams* decision suggests Warren's warning about the 300-day deadline and the fact that Plaintiff was represented by counsel have no bearing on the exhaustion of administrative remedies issue. The *Willams* court held that in order to satisfy the "charge" requirement, the filing must (1) be verified or submitted under oath or penalty of perjury, (2) contain information that is "sufficiently precise to identify the parties, and to describe generally the action or

practices complained of and (3) must comply with *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), which requires that an 'objective observer' . . . believe that the filing 'taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes[.]'" *Id.* at 509 (quoting *Holowecki*, 552 U.S. at 398).

Based on the above considerations, the Court concludes that Plaintiff filed a timely charge of discrimination consistent with *Williams v. CSX Transp. Co.*, 643 F.3d 502 (6th Cir. 2011). Here, Plaintiff's September 26, 2018 executed charge amended her July 26, 2018 Inquiry Questionnaire's technical defect of not having been verified. Her Inquiry Questionnaire identified Defendant and described that she had been terminated due to her post-partum depression. Lastly, an objective observer would believe that Plaintiff sought to activate the EEOC's machinery and remedial processes. This is evident from the agency's own acts where Warren assigned a charge number upon receipt of Plaintiff's form, conducted an interview with her and concluded that she had provided sufficient information to investigate as early as August 6, 2018. Also, on that date, Warren noted in the case file that Plaintiff had "elected to file a charge." Lastly, the EEOC sent Defendant a Notice of Charge of Discrimination, as well as sent Plaintiff a formal charge to sign.

Even though the Court concludes that Plaintiff has exhausted her administrative remedies consistent with *Williams v. CSX Transp. Co.*, 643 F.3d

502 (6th Cir. 2011), Defendant raises an additional argument with respect to the untimeliness of Plaintiff's sex discrimination claim or Count VI. Specifically, Defendant argues that Plaintiff's sex discrimination claim must be dismissed because Plaintiff's Intake Questionnaire only checked the box for disability discrimination and left the box for sex discrimination blank. Plaintiff made changes to the charge sent by Warren and added a claim for sex discrimination. This updated, executed charge was not received until September 26, 2018. Because she did not indicate that she was filing a sex discrimination claim on her intake form, her September 26, 2018 verified charge cannot cure the defect with respect to failing to check the box for sex discrimination.

Plaintiff counters that her Intake Questionnaire referenced her pregnancy and post-partum depression. Because these are the same facts that would support a sex discrimination claim, a seasoned investigator would naturally investigate both claims, which Plaintiff asserts occurred here. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 528 (6th Cir. 2005).

However, Defendant argues that *Tisdale* is distinguishable because the plaintiff was not represented by counsel in that case. Noting that charges filed by "lay complainants" should be "liberally construed[,]" the Sixth Circuit held that "where a claimant is unrepresented, a "broader reading of the charge . . . is compelled." *Id*. at 527. Thus, the *Tisdale* court concluded that because the

plaintiff's discrimination claim contained the same common core of operative facts as his retaliation claim, the plaintiff's failure to identify retaliation in his EEOC charge did not warrant judgment as a matter of law in favor of the defendant on the retaliation claim. *Id*. In reaching this conclusion, the *Tisdale* court relied on the fact that a seasoned investigator would naturally investigate the uncharged retaliation claim which reasonably could be expected to grow out of the charge of discrimination. *Id.*

Here, Plaintiff's disability discrimination claim contains the same common core of operative facts as her sex discrimination claim. Thus, Plaintiff's sex discrimination claim "could reasonably be expected to grow out of" Plaintiff's disability discrimination charge. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010); *see also Crowder v. Railcrew Xpress*, 557 F. App'x 487, 491 (6th Cir. 2014 ("The general rule is that plaintiff may file suit . . . in regard to the claims . . . within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.").

This "expected scope of investigation test" does not require that the EEOC actually investigate the claim brought by the plaintiff or that the plaintiff specifically state the claim in the EEOC charge. *Id*. All that is required is that Plaintiff allege "sufficient facts in [] her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate

box on the EEOC's complaint form." *Spengler*, 615 F.3d at 490 ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.").

Defendant argues that *Santiago v. Meyer Tool, Inc*., No. 1:19-cv-32, 2019 U.S. Dist. LEXIS 122612 (S.D. Ohio Jul. 23, 2019) is factually similar to the circumstances here. However, a review of the holding in *Santiago* demonstrates that the facts present in this matter are easily distinguishable from those present in *Santiago*. In that case, the plaintiff filed two charges of discrimination. *Id*. at *3. The first charge, which was filed within 300 days of the adverse action, alleged discrimination based on disability. *Id*. The second charge, filed after the expiration of the 300-day deadline, alleged gender discrimination in violation of Title VII and the EPA. *Id.*

The defendant-employer argued the plaintiff's gender discrimination claim was subject to dismissal because she had not filed a charge within 300 days of her filing. *Id.* at *5. The *Santiago* plaintiff argued that her Inquiry Questionnaire and her first charge of discrimination should be construed together as one timely charge of gender discrimination. *Id.* In rejecting this argument, the *Santiago* court relied on the fact that the plaintiff had failed to check the box indicating gender discrimination, as well as the fact that "[t]he narrative portion of the charge

mentions nothing about discrimination based on gender." *Id*. at *8-9. While the plaintiff's Inquiry Questionnaire indicated that "other individuals were treated better than her based on age, color, disability, national origin, race, and sex," and explained that her supervisor, Mr. Finn, was responsible for the discriminatory action, this was insufficient to put a reasonable observer on notice that she was asserting a claim of gender discrimination. *Id*. at *9. The *Santiago* court also distinguished the *Dimas* decision because in that case the Inquiry Questionnaire contained "factual statements providing more details of the alleged discrimination." *Id*. at *10-11.

Here, like the plaintiff in *Dimas*, and unlike the plaintiff in *Santiago*, Plaintiff alleged sufficient factual detail "to put the EEOC on notice" of her sex discrimination claim. *Spengler*, 615 F.3d at 490. Plaintiff's Intake form indicated that she had been fired from her job due to factors stemming from post-partum depression and that her FMLA leave had been approved, yet her employer failed to accommodate her disability. ECF No. 10-2, PageID.154. Plaintiff later updated her case file by emailing additional factual details to Warren indicating that she became pregnant in January of 2015, was forced to take an early maternity leave by her employer and that after she gave birth to her son, she began to suffer from post-partum depression. ECF 10-3, PageID.158. She explained that she began having thoughts of harming herself and sought intermittent FMLA leave in order to

seek mental health treatment. *Id*. She further noted that she had been denied a promotion due to her post-partum depression and that a supervisor told her that "when you start to feel better and back to your old self, we can look into promoting you." *Id.* She explained that she was terminated even though she was "actively under FMLA" and that her supervisor told her it did not matter that she had been granted FMLA leave. *Id*. Based upon this common core operative facts, Plaintiff's gender discrimination claim "could reasonably be expected to grow out of" Plaintiff's disability claim. "[D]iscrimination based on pregnancy is a clear form of discrimination based on sex . . . ." *Cline v. Catholic Diocese*, 206 F.3d 651, (6th Cir. 1999); *Ganzy v. Allen Christian Sch*., 995 F. Supp. 340, 349 (E.D.N.Y. 1998) (stating that restrictions on pregnancy "are not permitted because they are gender discriminatory by definition.")

Additionally, contrary to Defendant's argument, "the fact that [the Sixth Circuit] liberally construe[s] EEOC charges filed by *pro se* complainants does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel." *Spengler*, 615 F.3d at 490 (internal quotation marks and citations omitted). Lastly, the evidence of record shows that counsel did not file a formal appearance with the EEOC until August 6, 2018, or subsequent to Plaintiff's completion of the Inquiry Questionnaire on July 26, 2018.

For all of these reasons, the Court concludes that Defendant is not entitled to dismissal of Plaintiff's sex discrimination claim. Plaintiff alleged sufficient factual detail in her Inquiry Questionnaire and follow up correspondence "to put the EEOC on notice" of her sex discrimination claim and her subsequent verified charge alleging sex discrimination cured the technical defect that her intake form had not been verified.

## IV.    CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion for Partial Dismissal construed as a Motion for Partial Summary Judgment [#4] is DENIED.

SO ORDERED.

Dated: December 11, 2019                              /s/Gershwin A. Drain
                                                     GERSHWIN A. DRAIN
                                                     U.S. DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 11, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager